# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

---

No. 00-6092 WM

---

| | | |
|---|---|---|
| In re:  William Henry Redding and<br>        Patricia Redding | * | |
| | * | |
| | * | |
| | * | |
| Debtors. | * | |
| | * | |
| | * | |
| David E. Schroeder | * | Appeal from the United States |
| | * | Bankruptcy Court for the Western |
| Appellant, | * | District of Missouri |
| | * | |
| v. | * | |
| | * | |
| Norman E. Rouse, | * | |
| | * | |
| | * | |
| Appellee. | * | |

---

Submitted: April 27, 2001
Filed: June 21, 2001 (Corrected on 7/25/01)

---

Before KRESSEL, SCOTT, and KISHEL,[1] Bankruptcy Judges.

---

SCOTT, Bankruptcy Judge

---

[1]The Honorable Gregory F. Kishel, Chief Judge, United States Bankruptcy Court for the District of Minnesota, sitting by designation.

# I

The attorney for the debtors appeals an order directing him to disgorge $10,011.40 of the $11011.40 fees he received for his costs and services in the bankruptcy case. For the reasons set forth below, we affirm the order of the bankruptcy court.[2]

The debtors filed a chapter 13 petition to prevent a state court foreclosure of their real property. At that time, Schroeder, as counsel for the debtors, filed a statement under Rule 2016(b) disclosing that the debtors paid him $3,000 for services relating to the chapter 13 case, but did not, as required by Local Rule 2016-1, seek approval for payment of fees in excess of $1,000. Within three months, the debtors converted their case to chapter 11. Schroder's application on behalf of the debtors in possession for his employment was approved by the court. However, during the pendency of the case he billed the debtors and received in three separate payments the additional sum of $8,011.40, thereby obtaining a total of $11,011.40 in costs and fees during the pendency of the case.

Although the debtors apparently represented to Schroeder that the fees were being paid by one of their children, the source of the funds was not finally determined by the bankruptcy court. The chapter 7 trustee's subsequent investigation revealed that the funds may have been obtained when the debtors cashed a certificate of deposit prior to the filing of the chapter 13 case. In any event, there is no evidence in the record that Schroeder was aware of their true source. The debtors represented to him, and he apparently believed, that the funds were paid by the son and not derived from any asset of the estate.

---

[2]The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri.

Later, when confronted with the mortgagee's request for relief from stay, the debtors converted the case to chapter 7. The chapter 7 trustee discovered that the debtors had paid the additional $8,000 to Schroeder, and, since Schroeder had failed to disclose these payments, the trustee sought an order directing disgorgement of the fees. One month later, Schroeder finally filed the disclosure required by Rule 2016, Federal Rules of Bankruptcy Procedure, and application for approval and payment of his fees, as required by Local Rule 2016-1,in the sum of $14,715 in fees and $1001.96 in expenses, for a total of $15,716.96. The bankruptcy court disapproved the fees and directed disgorgement. We reversed and remanded, directing the bankruptcy court to analyze the fees under section 329 of the Bankruptcy Code and to issue further findings of fact regarding the reasons for the imposition of sanctions. On remand, the bankruptcy court found the fees to be reasonable in amount, but, based upon the failure to disclose the fee payments, ordered that Schroder disgorge $10,011.40 to the trustee. The court did not disallow the fees in their entirety, however, but provided for payment of the fees on a subordinated, nonpriority basis. The court noted that, since there was substantial property in the estate, there was some probability that the general unsecured creditors would be paid in full, after which Schroeder could be paid from any remaining funds.

Schroeder appeals from that order, asserting that the bankruptcy court abused its discretion in imposing disgorgement because the sanction was excessively harsh and severe in light of all of the circumstances. Secondly, Schroeder argues that the bankruptcy court erred in subordinating his fees to the claims of the unsecured creditors. Schroeder does not contest that he violated the Code, the Rules, and the Local Rules. Rather, he asserts that the sanction was too severe.

I I.

We review the bankruptcy court's findings of fact for clear error and its findings of law de novo. Fed. R. Bankr. P. 8013. We review the award of sanctions for abuse

of discretion. <u>In re Clark</u>, 223 F.3d 859 (8th Cir. 2000); <u>In re Kujawa</u>, 256 B.R. 598, 608 (B.A.P. 8th Cir. 2000).

III.

When an attorney files a bankruptcy case on behalf of a debtor, section 329[3] requires the attorney to submit a specific statement of the compensation paid or agreed to be paid for the services already rendered or to be rendered in connection with the case or, for that matter, merely in "contemplation" of the case. The statement, filed pursuant to the guidelines established by Rule 2016[4] and, in this instance, further

---

[3]Section 329 provides in pertinent part:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a).

[4]Rule 2016 provides:

(b) Disclosure of Compensation Paid or Promised to Attorney for Debtor. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not

4

delineated by local rule,[5] must be filed whether or not the attorney applies for the compensation to be paid from property of the estate and whether or not the attorney is in fact paid from property of the estate. The Code and Rules require, without exception, that the amount and source of the compensation be disclosed.

---

be required. A supplemental statement shall be filed and transmitted to the United Sates trustee within 15 days after any payment or agreement not previously disclosed.

Fed. R. Bankr. P. 2016(b).

[5]The local rule provides in pertinent part:

A. Prepetition Retainers. The disclosure of amount of retainer by debtor's counsel pursuant to § 329 and Bankruptcy Rule 2016(b) shall be filed with the petition and served on the U.S. Trustee and any trustee. All professionals shall deposit retainers, whether received from debtor or any other source, in a trust account, and withdraw and apply funds only after a fee application and order.

* * *

D. Applications over $1000. For applications for $1,000, in addition to service in Paragraph A, applicant shall serve on all creditors a notice (Appendix 2-167) stating: the amount of fees and expenses sought; period covered; number of previous applications filed; amounts of compensation previously sought and allowed; original retainer and balance; that parties have 20 days to object, if no objections are filed the Court may enter an order, and if objections are filed the Court may set a hearing.

Rule 2016-1A, -1D, Local Rules for the United States Bankruptcy Court for the Western District of Missouri (1997).

This provision is derived in large part from the Bankruptcy Act and reflects Congress' concern that payments to attorneys in the bankruptcy context might be the result of evasion of creditor protections and provide the opportunity for overreaching by attorneys. Thus, Congress provided not only for extensive Court, trustee, and creditor scrutiny of the compensation to be paid to attorneys and professionals in general, but also for broad discretion in imposing sanctions for violations of these strictures. See generally H. Rep. 95-595, 95th Cong., 1st Sess. 329 (1977); Sen. Rep. No. 95-989, 95th Cong., 2d Sess. 39-40 (1978).

In this case, the bankruptcy court held an evidentiary hearing on the issues and noted that Schroeder was knowledgeable and experienced in bankruptcy. Not only did Schroeder solicit the fees paid to him, i.e., he sent bills to obtain the funds, he did this over the course of a year without regard to the reporting requirements of the Code and Rules.[6] Only when the trustee sought disgorgement of the fees did Schroeder belatedly file the required disclosure and application for compensation. Indeed, the bankruptcy court's characterization of Schroeder's compliance as "grudging" appears, from this record, apt. Schroeder argues that there were other circumstance to be taken into account, including his ignorance of the true source of the funds, that he was working only to protect his clients, and complying with their directive that he guard the

---

[6]Schroeder's claim that he was unaware of the requirement for a supplemental disclosure makes the situation more egregious, not less, because, at a minimum, it reflects negatively upon the reasonableness of his fees. Moreover, ignorance of the rules governing professional compensation, as well as local rules, militates in favor of a determination that disgorgement is appropriate. In re Campbell, 259 B.R. 615, 628 (Bankr. N.D. Ohio 2001). In any event, we do not conclude that the bankruptcy court erred when it did not accept the arguments that an attorney who has practiced bankruptcy law for seventeen years was unaware of this requirement or that the attorney is somehow excused from compliance because this may be the rare instance at enforcing the rule locally.

attorney client privilege.[7] However, the record reflects that those facts were presented to the bankruptcy court. While it is true that not each and every fact asserted by Schroeder is stated in the court's findings, it is not required that a finder of fact address each and every fact placed before it. It is sufficient if the reviewing court may discern that the fact finder has reviewed all of the evidence and made a reasonable determination based upon those facts. See In re Leavitt, 171 F.3d 1219, 1223 (9th Cir. 1999)(findings are sufficient if they are "explicit enough on the ultimate issues to give the appellate court a clear understanding of the basis of the decision [to] ...enable it to determine the grounds on which the trial court reached its decision."); In re Fordu, 201 F.3d 693 (6th Cir. 1999). The bankruptcy court's findings in this case were made in a nonconclusory fashion and sufficient to permit meaningful appellate review. Taking all of the facts and circumstances into account, we do not find that the bankruptcy court abused its discretion.

Reviewing the record and the findings by the Court we cannot discern that the bankruptcy court clearly erred in its findings. While the sanction may be harsh, it is not without foundation and, therefore, not an abuse of discretion. Indeed, it could have

[7]Since the requirement exists in the Code, the debtors were either aware of this duty or, at a minimum, counsel had an obligation to make them aware of this requirement. Effectively, it is a condition to filing the bankruptcy case and debtors may not invoke the attorney client privilege to prohibit their attorney from complying with the strictures of the Bankruptcy Code. In any event, information such as the amount of payment and who makes the payment is not protected by the attorney client privilege. In re Grand Jury Subpoena, 55 F.3d 368, 3;69 (8th Cir. 1995)("[T]he rules of confidentiality ordinarily do not apply to client identity and fee information."); United States v. Sindel, 53 F.3d 874 (8th Cir. 1995)(Missouri attorney client privilege and Missouri Rules of Professional Conduct do not protect client identity and fee information from disclosure); Brennan v. Western Nat'l Mutual Ins. Co., 2001 WL 276801 *2 (D.S.D. Mar. 9, 2001)(applying federal law, fee information, including general purpose of the work performed is not protected from disclosure by the attorney client privilege); United States v. Long, 328 F. Supp. 233 (E.D. Mo. 1971).

been much worse, for, unlike the vast majority of similar situations in the case authority, the bankruptcy court permitted Schroeder to retain his claim, albeit subordinated to the unsecured creditors. Moreover, since there are assets in the estate, there is some prospect of remuneration.

The sanction was in keeping with that imposed by other courts and consistent with the important policies underlying the disclosure provisions and the attendant discretion the bankruptcy court has in fashioning sanctions for violations of these provisions. It is well settled that disgorgement of fees is an appropriate sanction for failure to comply with the disclosure requirements of section 329 and Rule 2016. Indeed, the Courts of Appeal which have addressed this and similar disclosure issues are emphatic in affirming the grant of sanctions. See, e.g., In re Independent Engineering Co., 197 F.3d 13 (1st Cir. 1999)(no error in denying all fees upon failure to disclose draws on retainer despite the assertion that the retainer was not estate property); In re Crivello, 134 F.3d 831, 839 (7th Cir. 1998)("We believe a bankruptcy court should punish a willful failure to disclose the connections required by Fed.R.Bankr.P. 2014 as severely as an attempt to put forth a fraud upon the court."); In re Lewis, 113 F.3d 1040 (9th Cir. 1997)(bankruptcy court is not required to determine whether fees are reasonable before ordering disgorgement of postpetition fees, and all postpetition fees were properly required to be disgorged upon failure to supplement initial disclosure); In re Downs, 103 F.3d 472, 477-78 (6th Cir. 1996)(disgorgement and denial of fees affirmed: "In cases involving an attorney's failure to disclose his fee arrangement under § 329 or Rule 2016, however, the courts have consistently denied all fees."(emphasis added)); In re Prudhomme, 43 F.3d 1000 (5th Cir. 1995)(entire $75,000 prepetition retainer properly ordered disgorged upon finding a pattern of nondisclosure); Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.), 4 F.3d 1556, 1566 (10th Cir. 1993), cert. denied, 510 U.S. 1114 (1994)(failure to disclose compensation results in forfeiture of any right to compensation; prejudgment interest on fee disgorgement may be ordered); Matter of Futuronics Corp., 655 F.2d 463 (2d Cir. 1981), cert. denied, 455 U.S. 941 (1982). Cf.

8

<u>In re Clark</u>, 223 F.3d 859 (8th Cir. 2000); <u>In re Kujawa</u>, 256 B.R. 598 (B.A.P. 8th Cir. 2000)($100,000 in sanctions plus $78,409 in attorneys' fees awarded).

Upon Schroeder's failure to disclose information regarding the compensation he received as required by Rule 2016, the bankruptcy court was required to determine the appropriate sanction. <u>See</u> <u>Schroeder v. Rouse</u> (<u>In re Redding</u>), 247 B.R. 474 (B.A.P. 8th Cir. 2000). It did so and, reviewing the facts and circumstances before the bankruptcy court in light of the policies embodied in section 329 and Rule 2016, we discern no clear error in the bankruptcy court's exercise of discretion regarding the appropriate sanction. Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT

9